UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                   CASE NO. 10-20086
                                                 HON: AVERN COHN

RAY LEBRON DAVIS,

    Defendant.

_____/

### **SENTENCING MEMORANDUM**[1]

    Defendant is before the Court for sentencing on his plea of guilty to a violation of 18 U.S.C. § 2422(b).  Count 3 of the indictment to which defendant has pled guilty charges attempted coercion and enticement by means of interstate commerce through the use of a telephone in an attempt to coerce and entice an individual who had not obtained the age of 18 to engage in sexual activity for which a person could be charged with a criminal offense.

    This statute calls for a minimum sentence of ten (10) years.  Defendant has already pled guilty in state court to Criminal Sexual Conduct in the 3rd Degree and is serving a sentence of 4 to 15 years in a state prison.  Criminal Sexual Conduct in the 3rd Degree is sexual penetration of a 13- to 16-year-old.  The substantive difference between the state crime for which defendant is serving time and the offense to which he has pled guilty appears to be the fact that there was an exchange between defendant and the victim of lewd and lascivious photographs through the use of a cell phone.

---

[1] This is a revised version of the Court's bench comments of June 23, 2011.

The factual basis for the plea is described in the Presentence Report as follows:

Between June 1, 2009 and November 25, 2009, defendant attempted to persuade, and did persuade, a 14-year-old minor to film herself engaged in sexual activity . . .

Defendant used his cellular telephone to contact the minor's cellular telephone in his attempts to persuade her to engage in such activity.

Defendant knew that the minor victim was 14-years-old.

The Rule 11 Agreement into which defendant entered scores under the Sentencing Guidelines (Guidelines) an Offense Level 35 and Criminal History Category III. The Presentence Report scores under the Guidelines an Offense Level 37 and Criminal History Category II.

The Presentence Report gets to 37 as follows:

| | |
|---|---|
| Base Offense Level | 32 |
| Minor Over 12, But Not Yet 16 | +2 |
| Commission of Sexual Act or Sexual Conduct | +2 |
| Relative of the Minor | +2 |
| Use of a Computer | +2 |
| | 40 |
| Subtotal | 40 |
| Acceptance of Responsibility | -3 |
| TOTAL OFFENSE LEVEL | 37 |

The Criminal History of II reflects a 1999 conviction for contributing to the delinquency of a minor and a 2007 conviction for driving on a suspended license. These total three (3) criminal history points. The Rule 11 Plea Agreement adds two (2) criminal history points because the offense to which defendant pled guilty was within two (2) years

of the driver's license offense.

The Presentence Report explains the difference as follows:

The guideline calculations set forth in the Rule 11 Agreement and those calculated by the probation department are not the same.  The plea agreement calculated a total offense level of 35 and a Criminal History Category III.  This results in a guideline range of 210 to 262 months.  However, the probation department assessed two additional points, pursuant to § 2G2.1(b)(2)(A), as the offense involved a sexual act or contact, and calculated a Criminal History Category II.  This results in a guideline range of 235 to 293 months.  It is noted all parties agree the mandatory minimum sentence is 120 months.

The Court finds a different Offense Level and a different Criminal History.  The Criminal History II overstates the seriousness of the prior offenses.  The Court finds the appropriate Criminal History is I.  The Offense Level is 34 according to the Presentence Report.  There was in the offense of conviction in the Court's view no commission of a sexual act or sexual conduct.  The relative of the victim increase is not appropriate.  The minor was not defendant's relative as the term is customarily used.  A telephone is not a computer.  It does not fit the definition of a computer in 18 U.S.C. § 1030(e).  The Court finds the appropriate Offense Level is 31, with a Criminal History of I, calling for a sentencing range of 108 to 135 months. The mandatory minimum sentence for the offense of conviction is 120 months.

The Court sentences defendant to the mandatory minimum of 120 months, to be followed by five (5) years of supervised release and a $100.00 special assessment.  The special conditions of supervised release are listed in Exhibit A, attached.  The sentence imposed is to be served concurrent to the state sentence.

This is a variance from the guideline range; the reasons follow.  These reasons reflect what was said by the Supreme Court in Kimbrough v. United States, 552 U.S. 85

(2007):

> We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."
>
> The sentencing judge, on the other hand, has "greater familiarity with . . . the individual case and the individual defendant before him than the Commission or the appeals court." He is therefore "in a superior position to find facts and judge their import under § 3553(a)" in each particular case. In light of these discrete institutional strengths, a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case "outside the 'heartland' to which the Commission intends individual Guidelines to apply."

Id. at 109 (internal citations omitted).

The Court finds that this case is outside the heartland of the Guidelines.

The Court has carefully read the letter of William R. Nixon, Jr., the psychologist who examined defendant, and who wrote the Federal Defender's Office on May 6, 2011, regarding the defendant as follows:

> Clinical examination finds a chronically depressed male in significant distress. The patient describes his psychological status from early-on in childhood to the present as constantly feeling deeply sad; having markedly diminished interest in and pleasure from most activities of daily living; and constantly carrying an intense sense of personal worthlessness and failure, including episodes of severe self-reproach. He reports for most of his life experiencing intermittent episodes of irritability, brooding, obsessive rumination, intense anger, and overwhelming anxiety. He admits to chronic difficulties in preserving emotional intimacy in all his relationships; has only unsatisfying and superficial relationships with men, with little or no meaningful object relatedness or emotional connection; and an extreme need for maintaining a dependent connection to a woman or women, without interruption. The nature of the patient's relationships with women is internally constructed so that their position in his life is temporary: although important at the moment, the unconscious connection to them is that at some point, sooner or later, he will have to live without them. However, while together, the patient is intensely connected in a loving way to the woman; has strong dependent needs to be highly regarded by her; and wishes to be a good-enough "boy" to underwrite that the woman will forever love him and wish to be with him. Careful examination of the structuralization of the patient's connection to

women notes the following: his love for them does not include elements of sexual sadism; the love is not meant to victimize or exploit them; and the love is wholly directly toward women of adult physical form and development. Detailed examination of the composition of the patient's libidinal instinct found no evidence of pedophilic aim or desire.  Quite to the contrary, there was consistent finding that the patient's object choice is more a replacement for an "adult" mother upon whom he can exert a powerful dependent and infantilized symbiotic interest, albeit one which is only temporary in his life, rather than a minor [whose] presence is aimed at the satisfaction of pedophilic desires.  Clinical examination of a number of masturbatory fantasies failed to identify any manifest or latent content, or free-associative evidence, of male or female child representation as a source of sexual stimulation.  Furthermore, there is no evidence by history that the patient has had sexualized interaction of any kind with a prepubescent male or female child.

The probation officer who prepared the Presentence Report recommends a sentence not significantly higher than the mandatory minimum, and said to the Court:

Before the Court is a 28-year-old male awaiting sentence for Attempted Coercion and Enticement.  The defendant's criminal history consists of Contributing to the Delinquency of a Minor, Driving While License Suspended, and Criminal Sexual Conduct, 3rd Degree, which is related to the instant offense.  Ray Lebron Davis has several college credits, and prior to incarceration maintained gainful employment.  He has six children ranging in age from three to nine, for whom he claims to have provided financial support along with frequent contact.

Davis endured a very troubled childhood, being removed from the parental home as an infant due to abuse.  The defendant's legs were both broken and he was malnourished at the time he was removed and placed into foster care.  He stayed in numerous placements prior to the age of six, when he was placed with a family in Ripley, Tennessee.  Davis remained in the home for three years prior to being removed due to allegations of sexual abuse.  The foster father was accused of sexually abusing another child in the home along with sexual abuse of his wife and children in the home.  Davis then continued in temporary placements until the age of nine, when a permanent home was found.  However, Davis continued having problems adjusting and, in fact, was hospitalized at least twice due to behavioral problems and psychological issues as a youngster.
Regarding the instant offense, Davis was actively involved in child pornography and the  transfer of pornographic images and videos.  The offense involved a female foster cousin Davis knew to be 14 years old.  Davis and the victim began text messaging and, over time, the defendant exploited

her age and vulnerability. Davis sent the victim pornographic images of himself and convinced her to send him these types of images and videos. This is obviously an egregious breach of trust. In addition, Davis and the victim had sexual intercourse, for which he was convicted of Criminal Sexual Conduct, 3rd Degree and sentenced to 48 to 180 months in state court.

Taking these factors into consideration, it is recommended the defendant be sentenced to 132 months' custody. While below the guideline range, this should serve the purpose of just punishment, protect society from future crimes, and hopefully send a message to the defendant that there are serious consequences for engaging in behavior such as this.

After defendant serves the custodial portion of his sentence, a five year period of supervised release is recommended. This will allow for continued monitoring of his adjustment back into society, hold him accountable for his actions, and hopefully deter him from engaging in additional criminal conduct.

While the probation officer recommends a sentence of 132 months, the Court finds that it is reasonable to impose 120 months. In arriving at this conclusion, the Court has taken into consideration Guideline 5H1.3, Mental and Emotional Conditions, which states they are not ordinarily relevant in determining whether a departure is warranted. See U.S.S.G. § 5H1.3 ("Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."). In this case the Court is satisfied given the severe nature of the mental and emotional conditions involving defendant as displayed in the psychologist's report that this is a consideration.

The Court has also taken into consideration the factors listed in 18 U.S.C. § 3553(a), which are not necessary to repeat. The sentence imposed reflects the seriousness of the offense, promotes respect for law, and provides just punishment. It is an adequate deterrent to future criminal conduct, which the Court does not believe the defendant once

back in society will engage in. Likewise, incarceration will give defendant some educational and vocational training. The sentence is within the range of sentences available.

The sentence imposed is sufficient but not greater than necessary to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation of defendant.


                                    S/Avern Cohn
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE

Dated: July 14, 2011


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 14, 2011, by electronic and/or ordinary mail.

                                    S/Julie Owens
                                    Case Manager, (313) 234-5160